## Snyder *against* Bowman.

An office paper, duly authenticated, needs no supplementary proof to make it official; and if it be not authenticated, it cannot be helped by proof that it is in the handwriting of one who was an office clerk at the time of which it bears date.

When a survey is found in the office, without any mark or other evidence when it was returned, it becomes a matter of fact for the jury to determine when it was returned; and it is error in the court to give a legal direction on the subject.

ERROR to the common pleas of *Dauphin* county.

This was an action of ejectment by Samuel Snyder against Josiah Bowman. The plaintiff claimed under an application in the name of William Stewart, dated in 1765, upon which a survey had been made in the same year by Bartram Galbraith, D. S. In order to show a return of this survey, the plaintiff called Jacob Eyster, Esq., a clerk in the surveyor-general's office, who testified as follows: "I find two surveys returned on Stewart's application; one, ninety acres in 1808 or 1809, by M'Kee; another, purporting to be returned by B. Galbraith, which I found in the patented file, enclosed in a survey by M'Kee: it should have been in the unpatented file. I have searched from the date of the survey, 1765, down to 1808 or 1809, and could find no evidence of its return." [A copy of Stewart's survey, certified in 1796, shown to the witness.] "This appears to have been made in the surveyor-general's office. Broadhead was surveyor-general in 1796, and Parker, who signed the paper, was his clerk. No mark on this, Stewart's, survey by Galbraith of its acceptance: before 1800 it was not the practice to mark the acceptance; since that it is." The plaintiff then offered the paper in evidence, to which the defendant objected, and the evidence was rejected, and the plaintiff took exception. The defendant claimed title under a warrant to Isaac Ferree the 26th of July 1774, and a patent to him dated the 19th of April 1803; and the defendant offered in evidence the draft of a survey made of the lands adjoining the land in dispute, which was an official paper in the handwriting of B. Galbraith, D. S. The plaintiff objected, and the objection was overruled, and the evidence given, and exception taken. In answer to a point put by the plaintiff's counsel to the court, on the subject of the return of survey, on the warrant to Stewart, the court thus instructed the jury:

" In order to establish a title under an application, the owner of it should show that he used due diligence to have a survey made and returned to the surveyor-general within a reasonable time. The question here is, when was the survey made by Bartram Galbraith, on the application of Stewart, returned? Plaintiff says there is evi-

[Snyder v. Bowman.]

dence of its having been returned within six months from the date of the survey, or, at all events, before the year 1800; because the draft of the survey has been found in the surveyor-general's office, without any indorsement of the time when it was brought there; and that the practice has been, since 1800, to indorse on the drafts the time when they were brought to the office. General Eyster, the chief clerk of the surveyor-general, says, this survey by B. Galbraith was found enclosed in the draft of a survey by M'Kee, D. S., of part of the same land, made in 1809, in the files of patented surveys, without any indorsement of the time when it. was brought to the office: that he has searched among the charges against B. Galbraith, D. S., from the date of this survey by him till 1809, and could find no trace of its return. The fact of its being found in the surveyor-general's office under these circumstances, furnishes no evidence from which it can be inferred that the survey of B. Galbraith was returned within six months from its date, or that it was returned before the 19th of April 1803, when Ferree obtained his patent. The delay in having the survey returned until Ferree obtained his patent, is too great; and in consequence of it Ferree would obtain a preference as it respects his right to the land."

*M'Clure*, for plaintiff in error, contended, that the draft of the survey of adjoining lands should not have been received in evidence. Every paper found in the district surveyor's office is not to be deemed official: Miller *v.* Carothers, 6 *Serg. & Rawle* 221; Farley *v.* Lenox, 8 *Serg. & Rawle* 392; Lessee of Hubley et al. *v.* White et al., 2 *Yeates* 133. Whether the survey of the plaintiff had been returned was a matter of fact for the determination of the jury; but the court gave a binding legal direction to the jury on that subject.

*Fisher*, for defendant in error. The authentication of an official paper cannot be aided by parol evidence. The draft of the adjoining surveys represented the division line between Ferree and Snyder, and,.therefore, had a legitimate bearing on the question. All the evidence on the subject of the plaintiff's return of survey was contained in information derived from the surveyor-general's office, and the court was right in saying that there was no legal evidence of its return.

PER CURIAM.—We cannot say that Bartram Galbraith's survey of 1778 was altogether irrelevant. It represents the division line between Ferree and Snyder; and surveys of adjoining tracts are frequently laid before the jury: it may, therefore, have had a legitimate bearing on the point in issue.

The copy of Stewart's survey, signed by Parker, was properly rejected. If it were duly authenticated according to the forms of the office, it would need no supplementary proof to make it an official paper; and if it be not, it certainly cannot be helped by proof that it

is in the handwriting of one who was an office clerk at the time of which it bears date. Apart from official authentication, his act is no better than his unofficial declaration, which is entitled to no credence when it is unsupported by a judicial oath.

But the direction is not to be sustained. The period of the return of Galbraith's survey on Stewart's location, was exclusively for the jury. There were no circumstances to raise a legal presumption of fact, and consequently none to warrant a legal direction. If the officer were bound to return his survey in a reasonable time, the usual presumption of performance of whatever is a duty, would take place in the first instance; subject, however, to be rebutted by a counter presumption, if there were circumstances to justify it. But the period of return did not depend on the duty of the officer, who was not bound to move in the matter till paid his fees; and the owner of the location might have thought fit to abandon it: there was, therefore, no legal presumption either way; and the presumption of a fact from a fact which operates by its natural weight, and without artificial force or conventional effect, is exclusively for the jury. Whatever, then, may have been the natural effect of the absence of any trace of the return of this survey in the charges against Bartram Galbraith *previous to 1800, since when it has been the practice to note the period of return on the back of the draft*, it is certain that the fact of finding the survey out of its proper place in the office was insufficient to produce the legal effect attributed to it.

Judgment reversed, and a *venire de novo* awarded.